**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WALTER E. ADAMS, JR.; SURESH K.**
**AGARWAL; JOHN C. ALDRICH; NORREL**
**A. CHAMBERS; JOSEPH J. CUTRI, JR.;**
**WILLIAM B. DAVEY; STEPHEN J. DOMAGO;**
**MICHAEL GOLDYCH; GREG GRESOCK;**
**GARY HOLTHOUSE; DENNIS JENKS;**
**NARINDER S. KABARWAL; JOHN L. KIBBE;**
**RAJA MAVATH; ROBERT MAWHINNEY;**
**RONALD F. MURRAY; SURJIT S. PABBY;**
**JOHN H. PARRISH; JAMES G. POINDEXTER,**
**SR.; ANWAR K. QURESHI; ARTHUR D.**
**SASSANI, JR.; KEITH SCOTT; MICHAEL**
**STANCLIFFE; DAVID H. STOWE;**
**FREDERICK R. WHITE; and ANTHONY**
**F. ZALLNICK, JR.,**

                                         **Plaintiffs,**


                 **v.**                                        **5:02-CV-1353**
                                                               **(FJS/GJD)**

**NIAGARA MOHAWK POWER CORPORATION**
**and NATIONAL GRID COMPANY, USA,**

                                         **Defendants.**
_____

**APPEARANCES**                              **OF COUNSEL**

**HANCOCK & ESTABROOK, LLP**                 **MICHAEL J. SCIOTTI, ESQ.**
1500 AXA Tower I
Syracuse, New York 13221
Attorneys for Plaintiffs

**BOND, SCHOENECK & KING, PLLC**             **ROBERT A. LABERGE, ESQ.**
One Lincoln Center                           **LOUIS ORBACH, ESQ.**
Syracuse, New York 13202-1355
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs, twenty-five[1] former employees of Defendant Niagara Mohawk Power Corporation ("NiMo"), filed a complaint on October 23, 2002, asserting a claim for breach of fiduciary duty, pursuant to Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, against Defendants NiMo and National Grid Company, USA ("National Grid").[2]  They additionally asserted claims against Defendant NiMo for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA") and the New York Labor Law and common law rescission of their employment agreements.

Defendants now move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the grounds that (1) they did not breach a fiduciary duty under ERISA because Plaintiffs did not rely to their detriment on any material misrepresentation; (2) Plaintiffs cannot recover under ERISA § 502(a)(3) because the relief they seek is not equitable; (3) Plaintiffs Adams, Mawhinney, Stowe, and White are barred from pursuing ERISA claims by their transition agreements; and (4) Plaintiffs are exempt from FLSA's and New York Labor Law's overtime requirements because they were executive, administrative, or professional employees.

---

[1] Plaintiff Norrel Chambers voluntarily dismissed his claims with prejudice.  *See* Dkt. No. 32.

[2] Pursuant to a June 25, 2003 Memorandum-Decision and Order, the Court dismissed Plaintiffs' ERISA claims against Defendant National Grid to the extent that they alleged that Defendant National Grid owed them a fiduciary duty.  However, the Court denied Defendant National Grid's motion to dismiss Plaintiffs' ERISA claims to the extent that they alleged that, as a non-fiduciary, Defendant National Grid knowingly participated in Defendant NiMo's fiduciary breach.  *See* Memorandum-Decision and Order dated June 25, 2003, at 7.

## II. BACKGROUND

Plaintiffs are former employees of Defendant NiMo who worked at the Nine Mile Point nuclear facility in Oswego, New York.  In November 2001, a time during which Defendant NiMo was in merger negotiations with National Grid, Defendant NiMo sold Nine Mile Point to a company called "Constellation."  Pursuant to its purchase of Nine Mile Point, Constellation agreed to retain all of Defendant NiMo's management employees, including Plaintiffs.  All Plaintiffs, except Plaintiff Sassani, chose to remain in their positions under Constellation's ownership.  Plaintiff Sassani, however, chose not to accept employment with Constellation and retired from Defendant NiMo on November 7, 2001.

Plaintiffs allege that officials of Defendant NiMo made material misrepresentations about Defendant NiMo's intention to make voluntary early retirement offers ("VEROs") during the time leading up to the Nine Mile Point sale.  Specifically, they claim that Defendant NiMo's chief nuclear officer, John Mueller, and others[3] told them at several meetings preceding the sale to Constellation that Defendant NiMo would not offer early retirement packages to otherwise eligible employees.  Plaintiffs also claim that Mr. Muller told them at these meetings, in essence, that Defendant NiMo would not allow its employees at the Nine Mile Point plants to transfer to other positions within Defendant NiMo's organization and that they would not be entitled to severance packages.

─────────────────

[3] Plaintiff Aldrich claims that Dennis Flood, director of corporate employee relations, told him that Defendant NiMo had "no plans for any sort of early retirement program." *See* Defendants' Exhibit "3" at 27.  He does not make any factual allegations against Mr. Mueller. Plaintiff Domago claims that Kathleen Miles, human resources director, made the misrepresentations.  Plaintiff Adams claims that Ralph Sylvia, a Nine Mile Point executive, may have made the misrepresentations that he heard.

Plaintiffs state that, despite these statements, Defendant NiMo issued VEROs to certain

of its employees in January 2002, after Plaintiffs had already accepted employment with

Constellation or retired.

### III. DISCUSSION

**A.      Plaintiffs' ERISA breach-of-fiduciary-duty claims**

Section 502 of ERISA provides that

> A civil action may be brought –
>
> * * * * * * * * * *
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act
> or practice which violates any provision of this subchapter or the
> terms of the plan, or (B) to obtain other appropriate equitable relief
> (i) to redress such violations or (ii) to enforce any provisions of this
> subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a)(3).

To obtain relief under this provision for breach of a fiduciary duty based on a

misrepresentation, a plaintiff must demonstrate "(1) that the defendants were acting in their

fiduciary capacities when they made the alleged misrepresentations; (2) that the defendants made

a material misrepresentation; and (3) that the plaintiff relied on that misrepresentation to his

detriment." *McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund*, 153 F. Supp. 2d 268,

296 (S.D.N.Y. 2001), *rev'd in part on other grounds*, 320 F.3d 151 (2d Cir. 2003) (citations

omitted).[4]

---

[4] There is, of course, a preliminary issue concerning whether Mr. Mueller and the other
officers' statements were misrepresentations at all.  This is an issue for the trier of fact.  *See*

(continued...)

When determining the materiality of an employer's alleged misrepresentation, the court must consider (1) whether the employer seriously considered implementing plan changes at the time the statement was made, (2) how significantly the statement misrepresented internal discussions about plan changes, (3) whether there was a special relationship of trust between the fiduciary and the plan participant, (4) whether there existed information or circumstances that would have lessened the importance of the statement to a reasonable employee, and (5) the statement's specificity.  *See Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 124-25 (2d Cir. 1997). The object of this analysis is to determine whether the misrepresentations "would induce a reasonable person to rely upon them," *id.* at 122 (citations omitted), which is "'a mixed question of law and fact,'" *Mullins*, 23 F.3d at 669 (quotation omitted).

As noted, Plaintiffs maintain that a number of Defendant NiMo's officers, at various times, made material misrepresentations to them concerning whether Defendant NiMo would issue VEROs.  Specifically, Plaintiffs allege that Defendant NiMo's officers told them, in essence, that Defendant NiMo would not offer early retirement benefits, that they would not be able to transfer to different departments within Defendant NiMo, and that Defendant NiMo would not offer them severance packages.

---

[4](...continued)
*Mullins v. Pfizer, Inc.*, 23 F.3d 663, 669 (2d Cir. 1994) (citation omitted) ("[T]he content of alleged statements attributable to [the defendant], as well as whether they constituted affirmative misrepresentations, are questions for the trier of fact." (citation omitted)).  The Court will assume, for purposes of this motion, that the alleged statements were misrepresentations.

### 1. Whether Defendant NiMo seriously considered issuing VEROs at the time that Mr. Muller made his statements in June 2001

Plaintiffs assert that Defendant NiMo seriously considered issuing VEROs at the time that Mr. Mueller made the misrepresentations in June 2001 as evidenced by its issuance of an internal newsletter in September 2000, stating that its "'goal [was] to achieve workforce reductions across the entire National Grid USA organization by 500 to 750 positions . . . through natural attrition and *voluntary programs*.'"  *See* Plaintiff's Memorandum of Law at 7 (quotation omitted).

After reviewing the evidence, the Court finds that the September 2000 newsletter does not demonstrate "serious consideration."  First, Plaintiffs have not even established that the phrase "voluntary programs" refers to the VEROs that Defendant NiMo ultimately issued. Plaintiffs cite Dennis Flood's testimony for the proposition that the "voluntary programs" suggested in the September 2000 newsletter were the VEROs that Defendant NiMo later issued in December 2001.  However, even if Mr. Flood testified that he believed that "voluntary programs" referred to the December 2001 VEROs, which is anything but clear from the transcript, Plaintiffs do not allege that Mr. Flood was involved in preparing the VEROs or in preparing the September 2000 newsletter.  Thus, his retrospective opinion about the newsletter's meaning is irrelevant.

Second, even assuming that the "voluntary programs" referred to in the September 2000 newsletter were the December 2001 VEROs, Plaintiffs still cannot show that Defendant NiMo seriously considered them when it issued that newsletter.  At best, the newsletter shows that Defendant NiMo was preparing for the merger with Defendant National Grid by evaluating its

-6-

options for a necessary workforce reduction.  Serious consideration does not occur until "(1) a specific proposal (2) is being discussed for purposes of implementation (3) by senior management with the authority to implement the change."  *Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533, 1539 (3d Cir. 1996).  This test was designed to "distinguish[] serious consideration from the antecedent steps of gathering information, developing strategies, and analyzing options."  *Id.* at 1539-40.  Plaintiffs have offered no evidence that Defendant NiMo's management had discussed any specific proposals concerning the VEROs as of June 2001.  Nor do Plaintiffs point to any facts that suggest that Defendant NiMo seriously considered whether Nine Mile Point employees would be allowed to transfer to other divisions or receive severance packages.

### 2. Significance of the misstatements compared to internal discussion

This factor is inapplicable because Plaintiffs have not offered any proof of internal discussions about the VEROs.

### 3. Special relationship of trust

Plaintiffs have not presented any evidence of a special relationship of trust between Plaintiffs and any of the individuals who Plaintiffs claim made misrepresentations.  Plaintiffs contend that they placed special trust in Mr. Mueller's statements because of his position as the chief nuclear officer in charge of Nine Mile Point.  However, they have not offered evidence of any personal dealings with Mr. Mueller, nor do they explain how their relationship with Mr. Mueller differed from the ordinary employer-employee relationship.  On the contrary, Mr.

-7-

Mueller's position as the highest ranking officer at Nine Mile Point tends to weigh against the existence of a special relationship.  In addition, Plaintiffs fail to point to any facts suggesting that they had a special relationship with any of the other alleged speakers, Mr. Flood, Mr. Sylvia, or Ms. Miles.[5]

### 4. Information or circumstances minimizing the misrepresentations' effects

The uncontested record demonstrates that Plaintiffs were exposed to various information and circumstances that minimized the importance of the alleged misrepresentations.  First, in anticipation of the merger between Defendants NiMo and National Grid, there was a high level of anxiety, speculation, and mistrust about employees' positions and benefits.  Plaintiffs Aldrich and Goldych both testified that there were many rumors concerning the possibility of early retirement programs.  *See* Plaintiffs' Exhibit "7" at 36; Plaintiffs' Exhibit "3" at 44.  At least some of the rumors suggested that Defendant NiMo would offer early retirement to its employees.  *See, e.g.,* Plaintiff Exhibit "3" at 44.  Consistent with many of these rumors, Plaintiff Aldrich testified that he heard from a friend that a vice president at Defendant NiMo said that there was going to be an early retirement program and that Nine Mile Point employees should try to seek positions with Defendant NiMo outside of the nuclear division.  *See id.* at 27.  Indeed, Plaintiff Kabarwal testified that, despite the alleged misrepresentations, he and many other employees were suspicious that Defendant NiMo would issue VEROs.  *See* Plaintiffs' Exhibit "11" at 52;

_____

[5] Plaintiff Aldrich testified that he "had had dealings with Mr. Flood in the past and thought that he would be [sic] a more, perhaps, honest response than Mr. Mueller," *see* Defendants' Exhibit "3" at 30; however, the facts do not show what these dealings were or why Plaintiff Aldrich thought Mr. Flood would be more honest than Mr. Mueller.

Defendants' Exhibit "11" at 53.  Likewise, Plaintiff Gresock testified that he harbored similar suspicions.  *See* Plaintiffs' Exhibit "8" at 105.

Moreover, some of the statements that Mr. Mueller made should have offset the effect of the alleged misrepresentations.  As stated, the evidence suggests that Mr. Mueller and other officers made a number of statements about the sale of Nine Mile Point to Constellation and about Defendant NiMo's merger with Defendant National Grid at various meetings.  Therefore, even assuming that Mr. Mueller and others stated that Defendant NiMo would not issue VEROs, the record suggests that, at other times, Mr. Mueller stated, in essence, that he did not know of any plans concerning early retirement programs.  *See* Defendants' Exhibit "22" at 35; Defendants' Exhibit "10" at 65.  These admissions should have tempered the effect of any absolute language concerning VEROs, transfers, or severance packages.

Finally, although the September 2000 newsletter is not sufficient to demonstrate that Defendant NiMo was seriously considering issuing VEROs, it should at least have alerted Plaintiffs that "voluntary programs," such as early retirement, were a possibility.  Although by itself this is not conclusive, in the context of a work environment fraught with rumors and suspicion, this fact also tends to minimize the importance of the alleged misrepresentations.

### 5. Specificity

Viewing the facts in the light most favorable to Plaintiffs, the central thrust of Mr. Mueller's principal misrepresentation is that, since Defendant NiMo lost a lot of money when it offered an early retirement program in 1993, it would not make such an offer again.  *See* Plaintiffs' Exhibit "5" at 45.  In *Ballone*, the court held that a statement was more likely to be

material if it was presented as a guarantee supported by specific statements of fact.  *See Ballone*, 109 F.3d at 125 (citation omitted).  However, the court also warned that such a guarantee must be realistic.  *See id.*  "In most circumstances, an employee probably cannot rely upon a representation that the employer has decided never to alter its benefits package, for example, because such a statement is too speculative and unbelievable . . . ."  *Id.*

Although Mr. Mueller offered an explanation for why Defendant NiMo would not issue any VEROs in the future, i.e., it had lost money on VEROs in the past, this was not sufficiently specific or realistic to constitute a guarantee.  The statements that the *Ballone* court found to be specific were far more detailed concerning current business challenges and, thus, were more believable.  In that case, the defendant corporation told the plaintiffs that it would not implement any plan changes because of "the cost of such an enhanced program, government regulations, and the lack of any immediate need for a future enhanced benefits program."  *Id.* at 121.  Unlike the statement in *Ballone*, Mr. Mueller's statement was essentially a prediction based on past experience.  Moreover, his statement was not tailored to Defendant NiMo's current business situation and, therefore, was less likely to bear Defendant NiMo's imprimatur.

Furthermore, to the extent that Mr. Mueller and other officers stated at other times that Defendant NiMo had no intention of offering an early retirement program, these statements were not supported by any specific statements of fact.  In addition, as noted, Mr. Mueller allegedly stated at other times that he was not sure whether Defendant NiMo planned to issue VEROs.  "The fact that [the speakers'] responses . . . were sometimes vague or non-specific does impact their materiality."  *Broga v. Nebraska Util.*, 315 F. Supp. 2d 212, 249 (D. Conn. 2004).

Therefore, based upon its review of the record, the Court finds that Defendants' alleged

-10-

misrepresentations were, at times, unrealistically speculative and, at other times, vague and unsupported.  Moreover, even if the Court were to find that these statements were sufficiently specific, this would not, alone, support a finding of materiality.[6]  *See Broga*, 315 F. Supp. 2d at 249 (opining that "the specificity of assurance factor is less important than the other [materiality] factors").

After reviewing all the factors relevant to the determination of whether Defendants' misrepresentations were material, the Court concludes, as a matter of law, that the alleged misrepresentations would not have induced a reasonable person to rely on them and, therefore, the Court grants Defendants' motion for summary judgment with respect to Plaintiffs' ERISA breach-of-fiduciary duty claims on the ground that Defendants' alleged misrepresentations are not material.

**B.    Plaintiffs' FLSA and New York Labor Law overtime claims against Defendant NiMo**

FLSA requires employers engaged in interstate commerce to provide overtime pay for an employee working more than forty hours per week "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207.  However, FLSA exempts from § 207's overtime requirements "any employee employed in a bona fide executive, administrative, or professional capacity . . . ."  29 U.S.C. § 213(1).  The burden is on the employer to demonstrate that its employees are exempt from the overtime requirements.  *See Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991) (citations omitted).  For claims arising

---

[6] Mr. Mueller's and others' statements that Plaintiffs would not be able to transfer or receive severance packages similarly lack specificity.

prior to 2004,[7] in order to prove whether an employee earning $250 per week or more falls within one of the exempt categories, the employer must satisfy the so-called "short test," which consists of a salary basis requirement and a duties requirement.[8]  *See Freeman v. Nat'l Broad. Co., Inc.*, 80 F.3d 78, 82 (2d Cir. 1996).  New York Labor Law is nearly identical to FLSA with respect to these overtime requirements and exemptions; however, unlike FLSA, it does not contain a salary basis requirement.

### 1. Salary basis requirement

Pursuant to the salary basis requirement, an employee must "regularly receive[] each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.118(a).  Although Plaintiffs do not contest that, each month, they received a predetermined base pay in excess of $250 that was not subject to reduction for any reason, they argue that they do not meet the salary basis requirement because Defendant NiMo paid them overtime and tracked the hours that they worked using time sheets. Plaintiffs are incorrect.

The Department of Labor issued a regulation stating that "additional compensation

_____

[7] In 2004, the Department of Labor amended its exemption regulations.  However, these regulations do not apply retroactively.  Thus, Plaintiffs' FLSA overtime claims are governed by the regulations in effect at the time of their employment with Defendant NiMo.  Prior to 2004, the regulations were last amended in 1975.

[8] The parties apparently agree that the "short test," as opposed to the "long test," which applies to employees earning less than $250 per week, applies to Plaintiffs.  *See* Plaintiffs' Memorandum of Law at 17.

besides the salary is not inconsistent with the salary basis of payment." 29 C.F.R. § 541.118(b).

"Applying this regulation, courts have consistently held that an employee's receipt of additional

amounts, *including overtime*, above his predetermined base compensation does not destroy the

employee's otherwise valid salary status." *Wright v. Aargo Sec. Servs., Inc.*, No. 99 CIV. 9115,

2001 WL 91705, *5 (S.D.N.Y. Feb. 2, 2001) (emphasis added) (citations omitted).  Moreover,

the fact that an employer keeps records of its employee's hours, by itself, has no bearing on that

employee's status as a salaried worker. *See B. N. Spradling v. City of Tulsa, Okla.*, 95 F.3d 1492,

1500 (10th Cir. 1996) (quotation omitted).  Accordingly, the Court finds that Plaintiffs meet the

salary basis requirement.


### 2. Duties requirement

Defendant NiMo contends that each Plaintiff worked in either an executive,

administrative, or professional capacity between October 23, 1996, and November 7, 2001.[9]

Plaintiffs claim that genuine issues of material fact exist concerning whether they were exempt;

however, they do not point to any evidence to support that claim.  They merely assert that many

of them were not licensed professional engineers within the meaning of New York State

Education Law § 7201.

---

[9] Plaintiffs separated from Defendant NiMo on November 7, 2001, and commenced this action on October 23, 2002.  FLSA permits recovery for willful violations occurring up to three years prior to the commencement of an action.  *See* 29 U.S.C. § 255(a).  New York Labor Law, on the other hand, permits recovery for willful violations occurring up to six years prior to the commencement of an action.  *See* N.Y. Labor Law § 198(3).  Therefore, the relevant time period for Plaintiffs' FLSA claims is October 23, 1999, through November 7, 2001; and the relevant time period for their New York Labor Law claims is October 23, 1996, through November 7, 2001.

"[N]owhere in the regulations is there a requirement that the employee hold a professional license.  Rather, the duties performed and the knowledge they require are the focus of the test." *Dingwall v. Friedman Fisher Assocs., P.C.*, 3 F. Supp. 2d 215, 219 (N.D.N.Y. 1998). Nevertheless, because Defendant NiMo bears the burden of proving that Plaintiffs were exempt employees pursuant to 29 U.S.C. § 213(1), the Court must determine whether there is *prima facie* evidence that Plaintiffs satisfy the duties requirement.

### a. Executive employees

Under FLSA, an employee is employed in an executive capacity if his "primary duty consists of the management of the enterprise in which employed or of a customarily recognized department or subsection thereof and includes the customary and regular direction of the work of two or more other employees therein."[10]  29 C.F.R. § 541.119.

Pursuant to these regulations, an employee's "principal, main, major or most important duty" must be management.  *See* 29 C.F.R. § 541.700(a).  When analyzing an employee's primary duty, a court may consider

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work;[11] the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages

---

[10] Under New York Labor Law, to qualify for the executive exemption, an employee must also have authority or influence over the hiring, firing, advancement, and promotion of other employees as well as "customarily and regularly exercise discretionary powers."  12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4)(i).

[11] Although this prong is not dispositive, "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement."  29 C.F.R. § 541.700(b).

> paid to other employees for the kind of nonexempt work performed
> by the employee.

*Id.*

The issue of what duties an employee actually performs is a question of fact, whereas, "[t]he

question whether [his] particular activities exclude[] [him] from the overtime benefits of the

FLSA is a question of law . . . ." *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

As defined under the Department of Labor regulations, "management"

> includes, but is not limited to, activities such as interviewing,
> selecting, and training of employees; setting and adjusting their
> rates of pay and hours of work; directing the work of employees;
> maintaining production or sales records for use in supervision or
> control; appraising employees' productivity and efficiency for the
> purpose of recommending promotions or other changes in status;
> handling employee complaints and grievances; disciplining
> employees . . .; providing for the safety and security of the
> employees or the property; planning and controlling the budget;
> and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Defendant NiMo contends that the following positions at Nine Mile Point qualify as

executive positions: (1) station shift supervisor, (2) general supervisor outages, (3) supervisor

radwaste operations, and (4) manager, maintenance.[12]  After reviewing the evidence in the record,

the Court concludes that Defendant NiMo has not established that any of the Plaintiffs who held

these positions were executive employees.  As the Department of Labor regulations make clear,

whether an employee is exempt is a fact-intensive inquiry, which requires information about the

position's description and requirements as well as the duties that the employee actually performs.

--------

[12] If true, this would exempt Plaintiffs Aldrich, Holthouse, Parrish, and Stancliffe
completely under both FLSA and New York Labor Law; Plaintiff Davey partially under New
York Labor Law; and Plaintiffs Gresock and Jenks partially under both laws.

-15-

By lumping Plaintiffs together under broad job-title headings, Defendant NiMo fails to provide the Court with sufficient information to determine whether any Plaintiff qualifies for this exemption.[13]  *See* 29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee.").  Accordingly, even assuming that station shift supervisors, general supervisors outages, supervisors radwaste operations, and maintenance managers typically perform management duties and regularly supervise two or more employees, the facts are insufficient to show that these were Plaintiffs' *primary* duties.[14]

### b. Administrative employees

Under FLSA, an employee is employed in an administrative capacity if his "primary duty consists of either the performance of office or nonmanual work directly related to management policies or general business operations of the employer or the employer's customers . . . where the performance of such primary duty includes work requiring the exercise of discretion and

---

[13] Additionally, Defendant NiMo fails to point to any evidence that the station shift supervisor, supervisor radwaste operations, or maintenance manager had authority or influence over hiring, firing or advancement of employees as New York Labor Law requires.

[14] For example, Defendant NiMo asserts that, "[a]s a station shift supervisor, Plaintiff Aldrich . . . supervised seven to eight employees each shift and was responsible for designing, planning, directing investigations and making recommendations and decisions within specialized areas of the overall nuclear generation program at Nine Mile Point."  *See* Defendants' Memorandum of Law at 31 (citation omitted).  Although this statement vaguely suggests that Plaintiff Aldrich had a great deal of authority, it tells nothing about what he designed and planned, what the investigations concerned, to whom he made recommendations and what the recommendations concerned, and whether he had any other duties.  Without this information, the Court cannot evaluate which of these duties, if any, were management-related.  Moreover, Defendant NiMo does not provide the hours that Plaintiff Aldrich allocated to the different tasks he performed.  Therefore, even if the Court could determine that some of his tasks were management-related, it cannot determine the proportion of hours that he spent performing those tasks.

-16-

independent judgment."  29 C.F.R. § 541.214.

Defendant NiMo contends that the following positions at Nine Mile Point qualify as administrative positions: (1) station shift supervisor, (2) general supervisor outages, (3) supervisor radwaste operations, (4) manager, maintenance, (5) lead engineer, (6) lead auditor, (7) lead nuclear planner/scheduler and unit coordinator, and (8) specialist.[15]  However, as previously stated, Defendant NiMo discusses Plaintiffs' positions with respect to their job titles, not their individual duties.  Therefore, even assuming that these jobs involved administrative tasks, the facts are insufficient to determine how much time any of the Plaintiffs who held these positions spent on such tasks or whether they had other non-administrative tasks.  In other words, Defendant NiMo has not established that Plaintiffs' *primary duties* consisted of work "directly related to [Defendant NiMo's] management policies or general business operations . . . ."  *Id.*

### c. Professional employees

Under FLSA, an employee is employed in a professional capacity if his

> primary duty consists of the performance of work requiring knowledge of an advanced type in a field of science or learning, or work as a teacher in the activity of imparting knowledge, which includes work requiring the consistent exercise of discretion and judgment, or consists of the performance of work requiring invention, imagination, or talent in a recognized field.

---

[15] If true, this would exempt all Plaintiffs *except* Plaintiff Agarwal, Plaintiff Cutri partially under New York Labor Law, Plaintiff Davey completely under FLSA and partially under New York Labor Law, Plaintiff Goldych, Plaintiff Gresock partially under New York Labor Law, Plaintiff Kabarwal completely under FLSA and partially under New York Labor Law, Plaintiff Mavath, Plaintiff Pabby completely under FLSA and partially under New York Labor Law, Plaintiff Qureshi, Plaintiff Sassani, Plaintiff White partially under both laws, and Plaintiff Zallnick.

29 C.F.R. § 541.315.

Pursuant to this regulation, it is not enough for an employer to show that an employee has attained an advanced degree in a field of science or learning.  Rather, the employer must show that the employee's work requires him to use such advanced knowledge.  Moreover, an employee's conclusory assertion that his position requires advanced knowledge or training is insufficient.  *See Young v. Cooper Cameron Corp.*, No. 04 Civ. 5968, 2006 WL 1562377, *6 (S.D.N.Y. June 6, 2006).

Defendant NiMo contends that the following positions at Nine Mile Point qualify as professional positions: (1) station shift supervisor, (2) general supervisor outages, (3) supervisor radwaste operations, (4) engineer, (5) lead auditor, (6) lead nuclear planner/scheduler and unit coordinator, and (7) specialist.[16]

To support this position, Defendant NiMo points to the assertions of various Plaintiffs that their positions required advanced knowledge and that they had substantial training as engineers.  However, although some Plaintiffs provided examples of the specific jobs that they performed, there is no evidence concerning the level of advanced knowledge or training in science or learning  that these jobs required.[17]  *See Young*, 2006 WL 1562377, at *6 (stating that

---

[16] If true, this would exempt all Plaintiffs *except* Plaintiff Aldrich partially under New York Labor Law, Plaintiff Davey completely under FLSA and partially under New York Labor Law, and Plaintiff White partially under both laws.  Moreover, because Plaintiff Davey does not assert an overtime claim with respect to his work as a project designer, Defendant NiMo argues that he is completely exempt under both laws.

[17] For example, the record reflects that some Plaintiffs' positions require a certain level of analysis in evaluating systems' design changes.  *See, e.g.,* Plaintiffs' Exhibit "19" at 28-29.  Although these duties appear, at first blush, to require professional-level knowledge, *see Dingwall*, 3 F. Supp. 2d at 219 (holding that an employee satisfied the duties test where he used

(continued...)

a position requiring only self-instruction and on-the-job training, even if it is "'of a highly technical nature in a field of science,'" may not, by itself, be sufficient to meet the duties test (quotation omitted)).  Nor is there any evidence that Defendant NiMo required an advanced degree or particular course of instruction as a prerequisite for Plaintiffs' engineering positions.[18] Thus, there is no way for the Court to evaluate, as a matter of law, whether Plaintiffs worked in a professional capacity or whether they were merely qualified professional engineers performing highly technical, but not learned or scientific, tasks.  *See id.*  Additionally, the record is unclear about the extent to which Plaintiffs exercised discretion and judgment in their positions as engineers.  Therefore, the Court finds that a genuine issue of material fact exists concerning whether Plaintiffs worked for Defendant NiMo in a professional capacity.

In sum, for the above-stated reasons, the Court concludes that Defendant NiMo has failed to carry its burden to show that Plaintiffs were exempt employees.  Accordingly, because genuine issues of material fact exist regarding this issue, the Court denies Defendant NiMo's motion for summary judgment with regard to Plaintiffs' FLSA and New York Labor Law claims.

---

[17](...continued)
considerable discretion and judgment in his position designing electrical systems), the evidence is insufficient to evaluate what that design and analysis entails and what kind of training is necessary for that work.

[18] The only concrete evidence of a job requirement in the record is a vacancy announcement for the position of operations support specialist 2, labeled Defendants' Exhibit "61," which states, "QUALIFICATIONS: BS Degree in related technical field *or equivalent technical training* . . . ."  *See* Defendants' Exhibit "61."  However, positions requiring only equivalency or on-the-job training ordinarily do not constitute professional positions.  *See Debejian v. Atl. Testing Labs., Ltd.*, 64 F. Supp. 2d 85, 89 (N.D.N.Y. 1999).  Since there is no indication what "equivalent technical training" means, the Court cannot determine the level of knowledge required for this position.

**C.      Plaintiffs' common law rescission claims against Defendant NiMo**

Although Defendant NiMo did not specifically move for summary judgment with respect

to Plaintiffs' common law rescission claims, the legal and factual bases for these claims overlap

significantly with Plaintiffs' ERISA material-misrepresentation claims.  Therefore, the Court will

address these claims.

In essence, Plaintiffs assert that they are entitled to rescission of their transition

agreements releasing Defendant NiMo from liability because Mr. Mueller's and others'

statements fraudulently induced them to sign these agreements when they accepted employment

with Constellation.

"Under New York law, '[i]n order to establish fraud, including both fraud in the

inducement and fraudulent misrepresentation, a party must establish: (1) a misrepresentation of

fact, (2) fraudulently uttered, (3) with the intent to induce reliance, (4) *inducing justifiable

reliance*, (5) resulting in injury.'"  *Blue Ridge Farms, Inc. v. Crown Equip. Corp.*, No. 01 CV

8460SJ, 2005 WL 755756, *11 (E.D.N.Y. Mar. 28, 2005) (emphasis added) (quotation omitted).

Alternatively, New York law provides a cause of action for negligent misrepresentation, for

which a party must establish that (1) the defendant had a duty of care to provide correct

information due to a special relationship with the plaintiff, (2) the defendant provided false

information, and (3) *the plaintiff reasonably relied on that information*.  *See id.* at *12 (citations

omitted).

For the same reasons that the Court determined that Plaintiffs failed to prove that the

alleged misrepresentations were material, the Court also finds that these same statements would

not have compelled justifiable reliance under New York law.  *Compare Banque Franco-*

*Hellenique de Commerce Int'l et Maritime, S.A. v. Christophides*, 106 F.3d 22, 27 (2d Cir. 1997) (stating that a plaintiff cannot show justifiable reliance on statements that it had reason to know were false), with *Ballone*, 109 F.3d at 124-25 (listing, among other factors used to determine whether a misrepresentation would reasonably induce reliance, whether the employee had access to information or circumstances tending to minimize the statement's importance).  Accordingly, the Court grants Defendant NiMo's motion for summary judgment with respect to Plaintiffs' state-law rescission claims.


## IV. CONCLUSION

After reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiffs' ERISA breach-of-fiduciary-duty claims and state-law rescission claims is **GRANTED**; and the Court further

**ORDERS** that Defendant NiMo's motion for summary judgment with respect to Plaintiffs' FLSA and New York Labor Law overtime claims is **DENIED**; and the Court further

**ORDERS** that Plaintiffs' counsel is to initiate a telephone conference with the Court and Defendant NiMo's counsel, using a professional telephone conferencing service, on **October 7, 2008, at 9:30 a.m.,** to set a date for the trial of this action.

**IT IS SO ORDERED.**

Dated: September 30, 2008
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

-21-